727 So.2d 1103 (1999)
Rose BRAVO, Appellant,
v.
Matilda SAUTER, as Successor Trustee of the Vincent J. Bravo Revocable Trust Agreement (as amended), and as Personal Representative of the Estate of Vincent J. Bravo, Deceased, Appellee.
Nos. 97-1576, 97-2512.
District Court of Appeal of Florida, Fourth District.
March 10, 1999.
*1104 William Jay Palmer and Steven D. Ginsburg of Adorno & Zeder, P.A., Miami, for appellant.
James A. Herb and Jennifer L. Fulton of Herb & Mednick, Boca Raton, for appellee.

ON MOTION FOR REHEARING
WARNER, J.
We withdraw our previously issued opinion and substitute the following in its place.
This case raises an issue of first impression in the field of estates and trusts. In brief, the question raised is does the surviving spouse forego her right to trust income where a decedent leaves an estate plan consisting of a pour-over will and a partially funded revocable inter vivos trust, but the surviving spouse takes an elective share in the estate? We hold that the wife does not lose her interest in the trust even though that interest may be paid from assets that pour over from the estate.
On January 2, 1980, Vincent J. Bravo ("decedent") created an inter vivos revocable trust agreement and executed his last will and testament. Approximately seven months after the decedent married appellant Rose Bravo (hereinafter referred to as "Bravo"), he amended his will and trust to substitute Bravo in place of his first wife who had predeceased him. The decedent died in 1993, and in his will he specifically devised a *1105 life estate to Bravo of all his tangible personal property, with its remainder to his children from his first marriage. The will provided that upon the decedent's death, the rest, residue and remainder of the property, both real and personal, would pour over to the trust, which allowed income for life to Bravo and distribution upon Bravo's death to the decedent's children, one of whom was Matilda Sauter (hereinafter referred to as "Sauter"), who was also the successor trustee of the trust and personal representative of the decedent's estate.
Bravo made an election, pursuant to section 732.201, Florida Statutes (1993), to claim an elective share in the decedent's probate estate. Sauter then contested Bravo's right to share in the trust since she had taken her statutory elective share of the estate. After many proceedings, the trial court ruled that Bravo's election to take her statutory share of the estate did not preclude her from receiving her beneficial interest in the trust. Additionally, the court made other rulings concerning the trust accounting. Bravo appeals the issues with respect to payment of certain expenses and the trust accounting, and Sauter cross-appeals the trial court's ruling as to Bravo's interest in the trust. We consider first the issue on cross-appeal.
Pursuant to section 732.513(1), Florida Statutes (1979), a testator could devise a "pour-over" of the residue of his estate to a trust that was already in existence. If the trust and will were executed concurrently, the written instrument establishing the trust must be identified in the will. See § 732.513(1). The decedent's will and trust included such a "pour-over" provision whereby the remainder assets of the estate would be placed into the inter vivos trust created by the testator. The trust authorized payment of income from the trust to Bravo for life and, upon her death, provided for distribution of the trust estate to the children of the decedent.
Sauter argues that the court erred in finding that by taking her elective share of the estate, Bravo did not forego her right to income from the remaining assets of the estate which poured over to the trust. She claims that application of section 732.211, Florida Statutes (1993), requires Bravo to lose any interest in the trust. That section, entitled "Effect of exercise of right of election on testamentary or statutory disposition," provides:
If an election is filed, the remaining assets of the estate after payment of the elective share shall be distributed as though the surviving spouse had predeceased the decedent.
While the application of this statute may be clear that the spouse loses any interest in the trust where the decedent's will provides for distribution to the spouse or to a testamentary trust created for the spouse, see Tarbox v. Palmer, 564 So.2d 1106, 1107 (Fla. 4th DCA 1990), this is a case of first impression at the appellate level as to whether the spouse's interest is likewise terminated in an inter vivos trust.
This identical issue has been addressed in Lorch v. Mercantile Trust Co. National Ass'n, 651 S.W.2d 540 (Mo.Ct.App.1983), a case which is factually "on all fours" with the present case. In Lorch, the decedent set up a revocable inter vivos trust and also executed a will with a "pour-over" provision very similar in content to the decedent's will in this case. The wife elected to take her statutory share of the estate and obtained a declaratory judgment that she could also receive the income from the trust during her lifetime in accordance with the trust provisions. The trustee appealed, and the Missouri appellate court rejected the trustee's argument that the surviving spouse had obtained "double benefits" from the same assets by electing against the will and then claiming her interest in the inter vivos trust, finding that "[b]ecause the trust in the case under review is inter vivos rather than testamentary in character, the disposition of the residue of the testator's estate is made to a trust which functions independently of the will." Id. at 542. The court then noted the following with regard to the effects of a surviving spouse's election against the decedent's will on the spouse's beneficial interest in the assets transferred to a trust by a pour-over provision in a will:
If ... the trust, at least when it is funded, has significance independently of the will, *1106 then so does the trust provision for the surviving spouse, and the spouse could not be viewed to take entirely by virtue of the will. The devise or bequest would seem to be to the trustee in its fiduciary capacity, not to the spouse. Breaking the chain of events down into steps, the will only goes so far as to give the trustee the devise or bequest; the trustee then, on his own, pays over what the trust instrument provides for the spouse.
Id. (quoting Thomas P. Atkins, Note, Surviving Spouse's Election and Acceleration of Remainders in Pour-Over Trusts, 41 U. Cinn. Law Rev. 441, 448 (1972))(footnotes omitted). Accordingly, the Missouri appellate court upheld the surviving spouse's right to retain a beneficial interest in the inter vivos trust, concluding that the decedent's will had effected a conveyance of the residuary to the trustee, who was then independently directed by the trust agreement. See id.; see also Carnahan v. Stallman, 29 Ohio App.3d 293, 504 N.E.2d 1218, 1220-21 (1986).
Sauter cites In re Clark's Estate, 8 Pa. D. & C.2d 665 (Orphans' Ct.1956), in contravention of Lorch. In Clark, the court held that a widow electing to take against the will could not then receive any beneficial interest in assets from a pour-over inter vivos trust. However, Lorch distinguishes Clark on the basis that Pennsylvania treats revocable inter vivos trusts as testamentary trusts, while Missouri does not. See Lorch, 651 S.W.2d at 542. Similarly, in Florida inter vivos trusts are not considered testamentary even though the settlor may reserve a beneficial life interest, the power to revoke or modify, and the power to control the trustee's administration of the trust. See Zuckerman v. Alter, 615 So.2d 661, 663 (Fla. 1993); In re Estate of Robinson, 720 So.2d 540, 542 (Fla. 4th DCA 1998).
Because section 732.211 treats Bravo as predeceasing her husband for purposes of distribution of the remaining assets of the estate, Sauter claims that the incorporation by reference of the trust in the will means that the trust provisions regarding distribution where Bravo predeceases her husband apply, thus requiring distribution of the assets to the remaining beneficiaries. In Lorch, the trustee also argued that the trust was incorporated by reference into the will so that the terms of the trust should be read as part of the will. If that were done, then the wife's interest in the trust would become part of the will, which interest would then be denied to her under section 474.160, Missouri Revised Statutes, the counterpart to section 732.211. The court held that the trust was not incorporated by reference, as the will only referred to it by name and date and, just as in the present case, specifically provided for the incorporation by reference of the terms of the trust into the will only if the trust were no longer in existence at the time of the testator's death.
Florida law also would not support the contention that the will incorporated by reference the terms of the trust. Section 732.512(1), Florida Statutes (1995), provides that: "A writing in existence when a will is executed may be incorporated by reference if the language of the will manifests this intent and describes the writing sufficiently to permit its identification." We have held that two references in the testator's will to an inter vivos trust, one which provided for the testate's residuary to pour over into the trust and the other which provided for the payment of estate taxes from trust assets, were insufficient to incorporate the trust into the will by reference. See Martin v. Martin, 687 So.2d 903, 907 (Fla. 4th DCA 1997). In addition, the will in the present case manifested an intention to incorporate the terms of the trust into the will only if the trust were no longer in existence at the time of the testator's death.
Similar to Lorch, we have also concluded that the establishment of an inter vivos trust is an act of independent significance such that a change in the trust or the will does not mandate a change in the other document. In In re Estate of Katz, 528 So.2d 422 (Fla. 4th DCA 1988), the testator established an inter vivos trust and a will with a pour-over provision. Within a few weeks before his death, he amended the trust to give the majority of the trust to charities. After his death, the original beneficiaries under the trust sought to declare the amendments to the trust as violating the mortmain statute. See *1107 § 732.803, Fla. Stat. (1987). Our court refused to construe the inter vivos trust as a testamentary disposition so that the mortmain statute would apply. Instead, we held that the trust was a fact of independent significance and that the pour-over provision did not make the trust testamentary in nature.
It appears that Missouri has modified its statutes subsequent to the execution of the will and trust in Lorch to include in the valuation of the elective share any beneficial interest of the surviving spouse in a trust created by the decedent during his lifetime. See § 474.163, Mo.Rev.Stat. (1982 Supp.). Florida has no such provision. Thus, we agree with the conclusion of the Missouri appellate court when it noted:
It was the testator's implied intention not to deprive respondent of her interest under the trust. A clear incorporation by reference of the trust into the will, or a clause in the trust expressly denying respondent an interest in the trust in the event of her election to take against the will, would have been sufficient to deprive respondent of any equitable interest under the trust. Mr. Lorch failed to make either provision.
See Lorch, 651 S.W.2d at 544. The same statement could be made in this case. We hold that Bravo's election of her statutory share did not extinguish her interest in the trust income.
Sauter makes an argument that this result is inequitable. However, under the facts of this case we cannot agree. We cannot say that the deceased would have expected that his wife, by taking approximately $50,000 in cash, would thereby forego her income interest in the remaining $100,000 of the estate assets. The most significant asset of the trust was the marital home, which would not generate much income interest unless sold, something the trustee was not obligated to do. Therefore, if the wife did not receive income from the probate assets transferred to the trust, the wife would receive very little, if any, income from the remaining trust assets. This too may have been inequitable to the wife. Again, as in Lorch, the decedent could have made his intent more clear but did not.
In her appeal, Bravo contends that the trial court erred in overruling her objection to the trustee's accounting based on the trustee's failure to include income earned by the estate's assets in the accounting. We agree. Section 738.04(1), Florida Statutes (1995), provides:
An income beneficiary is entitled to income from the date specified in the trust instrument or, if none is specified, from the date an asset becomes subject to the trust. In the case of an asset becoming subject to a trust by reason of a will, it becomes subject to the trust at the date of the death of the testator even though there is an intervening period of administration of the testator's estate.

(emphasis supplied). Because of the statute, Bravo is correct that she was entitled to receive income from the estate assets which poured over to the trust. Therefore, the court erred in overruling her objection.
Bravo also complains that the trial court overruled her objection to various expenses on the accounting. First, we agree with her that Sauter did not meet her burden of proving that she had incurred miscellaneous expenses for stamps, mailings, faxes, telephone calls, and travel, as well as maintenance expenses paid to Mark Rotker, and that she had incurred such expenses on behalf of the trust. A trustee is under a strict duty to keep and render a complete and accurate record and accounting as to its trusteeship to the beneficiary. See Brent v. Smathers, 547 So.2d 683, 685 (Fla. 3d DCA 1989). Sauter's failure to make "clear, distinct, and accurate accounts" as to her expenditures from the trust's funds requires all "obscurities and doubts" to be resolved against her as trustee. See Benbow v. Benbow, 117 Fla. 37, 157 So. 512, 519 (1934). The evidence presented did not meet this standard, since Sauter had nothing to support her testimony that she spent the amounts indicated, nor did she testify that the sums were incurred for trust expenses.
We also reverse that part of the trial court's order approving Sauter's allocation of *1108 her entire trustee fee to income. Section 738.13(1)(e), Florida Statutes (1995), directs the trustee to charge one-half of its "regular compensation, whether based on a percentage of principal or income, and all expenses reasonably incurred for current management of principal and application of income" against income, and section 738.13(3)(a) provides for the charging of any remaining compensation of the trustee against the principal. Sauter's allocation of her entire fee to the income violates these provisions. Although one provision of the trust instrument gives the trustee discretion to allocate her fee between principal and income, this only applies to the trustee's fees for the preparation of the trust's tax returns. In light of Sauter's testimony that an accountant prepared the trust's returns, she cannot rely on this particular provision to support the arbitrary allocation of her entire trustee's fee to income.
Bravo also objected to payments reflected on the accounting as interest payments in the amount of $730.10, charged against trust income, for $15,000 in "loans" that Sauter had made from the estate in order to pay trust expenses. Bravo contended that any transfers of funds from the estate to the trust constituted partial distributions from the estate, not loans. In reality, these funds were neither "loans" nor "partial distributions" because they had already become part of the trust's principal on the date of the decedent's death. See § 738.04(1), Fla. Stat. (1995)(assets becoming subject to trust by reason of will are subject to trust on date of testator's death). The language in the will, which provides for the disposition of the residuary assets of the estate, buttresses this conclusion:

Said property shall be added to the principal of the trust fund therein established as an integral part thereof, to be held, administered and distributed by the Trustee in accordance with all the terms and provisions of said Trust Agreement as it is written at the time of the execution of this will, or as it may from time to time hereafter be amended.

The receipt of said Trustee under said Trust Agreement shall be a full acquittance and discharge to my Personal Representative for the property so distributed to it. Upon distribution to the Trustee, the administration of my estate shall cease with respect to the assets passing to the Trustee, and the Trustee shall not be required to account to nor be subject to the control of the Court in which my will is probated.
(emphases added). Thus, upon the death of the decedent, the estate assets poured over to the trust and became an integral part of its principal. Sauter's attempts to borrow funds from the estate, which should have immediately transferred those assets to the trust, had no basis in either law or logic. We thus reverse that aspect of the court's judgment overruling Bravo's objection to Sauter's payment of interest to the estate.
We affirm as to the remaining points on both the appeal and cross-appeal. Affirmed in part; reversed in part and remanded for further proceedings.
DELL and SHAHOOD, JJ., concur.
DELL, J., did not participate in oral argument, but has had the opportunity to review the entire proceedings.