GROSS, J.
The issue in this case is whether a decedent created an “elective share trust” within the meaning of section 732.2025(2), Florida Statutes (2005). We hold that the instruments here at issue did not create an elective share trust and affirm.
Frances and Cedric Janien purchased a home as tenants by the entirety in North Chatham, Massachusetts in 1971. In 1973, Cedric executed a quit claim deed transferring to his wife, Frances, “all right, title, and interest” in the Massachusetts home.
Frances executed a Florida will in 1982. In Article IV, she devised a “life estate” in the Massachusetts property to Cedric, as follows:
I give a life estate in my residences at Boca Raton, Florida and North Chat-ham, Massachusetts to my husband, Ce-driC JaNien, if he survives me. My husband shall be entitled to all the income from the property during his lifetime, shall be responsible for all maintenance charges and taxes assessed against the property during his lifetime, and may not sell his life estate to any third party.
On December 8, 1989, Frances executed two documents that altered her estate plan. First, Frances created a nominee real estate trust entitled the “North Chatham Realty Nominee Realty Trust.” She transferred the Massachusetts property into the nominee trust by executing a quit claim deed. The 2.2 acre property is the only asset of the trust. Under the nominee trust, Frances was the sole beneficiary and her son, Christopher Janien, was the trustee. The nominee trust stated that it was to be governed according to Massachusetts law.[1]
*266 Second, also on December 8, 1989, Frances executed a Massachusetts will. The 1989 will recognized the transfer of the Massachusetts home into the nominee trust in a bequest that acknowledged the Massachusetts home to be a trust asset. The 1989 will stated:
ARTICLE SECOND: If my husband, Cedric Janien, survives me:
A. I devise and bequeath my beneficial interest in the North Chatham Realty Trust, together with all furniture, fixtures, antiques and other items of personal property in said residence, to my Trustee, with the right in my husband to exclusively live in and occupy such residence for the period of his life, and provided that he is financially able to do so, he shall be responsible for all maintenance charges and taxes assessed against the residence during his lifetime. If he does not have the financial ability to pay such expenses and taxes, them my Trustee is authorized and is directed to mortgage the premises for the purpose of paying such maintenance charges and taxes.
Finally, on January 23, 1997, Frances executed a second Florida will. In Article Two, the Florida will contains language identical to that of Article Second, A, of the 1989 will quoted above.
After Frances died on November 8, 2003, her 1997 Florida will was admitted to probate. Her son Christopher served as both personal representative of her estate and trustee of the nominee trust. At the time of Frances’s death, both Frances and Cedric were staying at the Massachusetts home. After Frances’s death, Cedric went to live with his daughter Linda in New York.
Cedric filed a timely election to take an elective share of his wife’s estate, motivated, he contends, by his wife’s “parsimonious provision for him in her Will.” On January 18, 2005, Christopher, as personal representative of the estate, filed a petition to determine elective share. By an amendment to the petition, Christopher requested the court to construe Article Two of the 1997 Florida will as creating an elective share trust.
The parties agreed that the valuation of the trust turned on whether Article Second (A) quoted above, amounted to an elective share trust. See § 732.2025(2), Fla. Stat. (2005). If Article Second (A) created an elective share trust, then its value satisfied Cedric’s elective share. If Article Second (A) were classified as an ordinary trust, then its actuarial value would be lower, so that Cedric was entitled to an additional cash payment from the estate to satisfy his elective share. As Cedric argues, Christopher, the trustee of the nominee trust, “has attempted to limit Cedric’s elective share to the bare right of occupancy in the Massachusetts property, with no cash payment to Cedric,” by asserting that Article Second (A) amounts to an elective share trust.
The court conducted a trial on the disputed issues in December, 2005. Neither the Massachusetts attorney who drafted the 1989 will and nominee trust, nor the attorney who drafted the 1997 Florida will had ever heard of an elective share trust at the time they performed the drafting work for Frances.[2] On February 6, 2006, the *267 court entered an amended order concluding that Article Second (A) was not an elective share trust under section 732.2025(2).
We agree with the trial court that Article Second (A) did not create an elective share trust. Section 732.2025(2) defines an elective share trust and provides,
(2) “Elective share trust” means a trust where:
(a) The surviving spouse is entitled for life to the use of the property or to all of the income payable at least as often as annually;
(b) The trust is subject to the provisions of former s. 738.12[3] or the surviving spouse has the right under the terms of the trust or state law to require the trustee either to make the property productive or to convert it within a reasonable time; and
(c) During the spouse’s life, no person other than the spouse has the power to distribute income or principal to anyone other than the spouse.
First, Article Second (A) fails to satisfy the requirement of section 732.2025(2)(a), because under the 1989 and 1997 wills, Cedric is entitled neither to the “use” of the property within the meaning of the statute, nor to “income” derived from the property.
Article Second (A) devised the “beneficial interest” in the nominee trust to Christopher, the trustee; the will left Cedric something less than the beneficial interest, which was the “right” to “exclusively live in and occupy” the residence on the Chatham property. Cedric does not have the right to all “use” of the beneficial interest in the trust, because he does not have the right to receive income derived from the property. Under Article Second (A), the obligation of the trustee is not to manage the trust property to produce income for Cedric. Rather, if Cedric cannot afford the maintenance and taxes on the property, the trustee is “directed” to mortgage the property to pay the maintenance and taxes, an action designed to safeguard the property, not to support Cedric. The power to mortgage the property rests with the trustee, not with Cedric.
Unlike the 1982 Florida will, Article Second (A) created something less than a life estate in the Massachusetts property. “As an incident to [a] life estate in ... realty [one] becomes entitled to the exclusive use and occupation of the property with the right to such rents, issues and profits as are derivable therefrom.... ” Marshall v. Hewett, 156 Fla. 645, 24 So.2d 1, 3 (1945). The granting of only the right to “live in and occupy” the residence, and not the “use” of the beneficial interest in the trust, distinguishes this case from cases holding that instruments employing the term of art “use” have created a life estate in real property. Thus, in Joyner v. Williams, 156 Fla. 615, 23 So.2d 853, 854 (1945), the supreme court held that the following language in a deed created a life estate in the entire “premises” described in the deed, and not merely a life estate in a cottage located on the premises: “shall be permitted to use and occupy said premises as a home as long as” either party shall live.
For these reasons, we conclude that Article Second (A) gave Cedric something less than “use of the property” for life under section 732.2025(2)(a).
*268 We also hold that Article Second (A) does not satisfy the requirements of section 732.2025(2)(b). That section requires that the purported elective share trust be “subject to the provisions of former s. 738.12 or the surviving spouse has the right under the terms of the trust or state law to require the trustee either to make the property productive or to convert it within a reasonable time.”
Nothing in Article Second (A) gives Cedric the right to compel the trustee “to make the property productive” or to sell or otherwise convert it. No express language in the Article subjects the trust to section 738.12. Even if it had not been repealed, that section would be inapplicable here, since it applied only in favor of an income beneficiary of an irrevocable trust. See § 738.12, Fla. Stat. (2001). Article Second (A) does not make Cedric an income beneficiary of the nominee trust. We reject Christopher’s reading of Sauter v. Bravo, 771 So.2d 1213 (Fla. 4th DCA 2000) that the right to live in real property equate[s] to (and therefore satisfie[s]) the right to all the income on the property as required under former section 738.12. Unlike the instruments involved in this case, the trust agreement in Sauter allowed a widow “income for life”; the widow’s right to income did not arise merely from her right to reside in the real property. 771 So.2d at 1213.
Christopher argues that section 738.606, Florida Statutes (2005), provides Cedric the statutory authority to compel the trustee to produce income from the Massachusetts property. However, that section applies to a “trust the income of which is required to be distributed to the grantor’s spouse.” Id. Article Second (A) does not require that any income be distributed to Cedric.
On a remaining point on appeal, we decline Christopher’s invitation to rewrite the wills under the guise of construing them.

Affirmed.

GUNTHER and FARMER, JJ., concur.

. "A 'nominee trust' is a trust in which the trustee holds legal title to the trust property for the trust's beneficiaries, but the beneficiaries exercise the controlling powers, and the actions that the trustees may take on their own are very limited. Such trusts are a common device for holding title to real estate, and afford certain tax advantages. A nominee trust is not a trust in the strict classical sense, because of the trustee-beneficiaiy relationship.” 76 Am.Jur.2d Trusts § 7 (2006) (citing Vittands v. Sudduth, 49 Mass.App.Ct. 401, 730 N.E.2d 325 (2000)). "The trustee of a nominee trust acts at the direction of the beneficiaries, functioning more as an agent than as a true trustee.” Zuroff v. First Wisconsin Trust *266 Co., 41 Mass.App.Ct. 491, 671 N.E.2d 982, 983 n. 3 (1996); see Morrison v. Lennett, 415 Mass. 857, 616 N.E.2d 92, 94 (1993).

. We note that section 732.2155(4), Florida Statutes (2005), provides that "any trust created by the decedent before the effective date [contained in section 732.2155(1) ] that meets the requirements of an elective share trust is treated as if the decedent created the trust after the effective date of these sections and in satisfaction of the elective share.”

. Section 738.12 was repealed by Chapter 2002-42, section 2, Laws of Florida, effective January 1, 2003.